STATE OF NEW YORK : NASSAU COUNTY
SUPREME COURT : PART 45

---

THE PEOPLE OF THE STATE OF NEW YORK,

- against -

RICARDO WALTERS,

Defendant.

IND: 436N-08

NYSID: 7384787P

SENTENCE

---

January 13th, 2008
262 Old Country Road
Mineola, New York

Before:

THE HONORABLE JAMES P. McCORMACK,
Acting Supreme Court Justice.

For the People:

HON. KATHLEEN M. RICE
District Attorney - Nassau County
BY: MADELINE SINGAS, ESQ.
Assistant District Attorney

For the Defendant:

DENNIS LEMKE, ESQ.
114 Old Country Road
Mineola, New York 11501

Buff Branson, RPR
Senior Court Reporter

THE CLERK: This is on the sentence calendar, People against Ricardo Walters, Indictment 436N of 2008.

Counsel, your appearances please?

MS. SINGAS: For the People, Assistant District Attorney Madeline Singas And Assistant District Attorney Theresa Tebbett.

MR. LEMKE: For Mr. Walters, Dennis Lemke, 114 Old Country Road, Mineola, New York.

Your Honor, before we proceed -- I don't believe he's a security risk -- I would ask my client's handcuffs be removed for sentencing.

THE COURT: Yes.

MR. LEMKE: Thank you.

THE CLERK: You are Ricardo Walters?

THE DEFENDANT: Yes.

THE CLERK: You appear with your attorney, Dennis Lemke?

THE DEFENDANT: Yes.

THE CLERK: Mr. Lemke, is your client ready for sentence?

MR. LEMKE: Yes, he is.

THE CLERK: Do the People wish to be heard?

MS. SINGAS: Yes, they do. Thank you, Judge.

Ricardo Walters sits before you having been convicted of thirteen felonies representing four incidents involving five different victims.

Your Honor, you presided over this jury trial so there is no reason to revisit the facts of each case. Suffice it to say, the evidence in this case was strong.

As you are well aware, in one case he was caught in the act having just robbed a woman. In another there was DNA evidence found on a woman's breast. DNA that remained in the DNA databank for years before anyone knew the name Ricardo Walters.

The description on every incident matched this defendant to a T. Witnesses and victims were shown photo arrays and picked the defendant out of lineups.

The women in this case, the victims, were young, terrified, unarmed women. Most of them were women who had come to this country for a better life, women who work and continue to work long hours for little pay, not asking for handouts, but trying to make it in a place where, with hard work, they could lead there lives with dignity and hold their head up high.

Ultimately, your Honor, it is a sad day for

law enforcement when one of its own is convicted for such heinous and violent crimes, where one of its own abuses the authority the public has vested in them, when a man who the public has looked to for protection and order now becomes a person that that very public needs protection from.

When the public trust has been violated, Judge, then the punishment must be severe, a message that society will not tolerate breaches in integrity by those entrusted to serve us.

Ricardo Walters had much, a job with responsibility, a family who clearly loves him. That shouldn't enure to his benefit, Judge. He hid behind those things and that enabled him to carry out these vicious attacks for so long.

If not for the fortuitous drive-by by Officer Este, he would have continued to hide, and people would have been loathe to believe that a law enforcement officer who had so much could sink so low. But he did and the time has come that he be sentenced for each crime.

Each incident represents another woman whose only crime was to cross his path, another woman who, to him, appeared vulnerable and off her guard. Each crime demands a separate sentence which needs to run

consecutive to each other sentence.

This law enforcement officer could have stopped after he robbed each of these women. He chose not to and he committed new and different crimes, kidnapping, rapes, sexual abuses, despite when one victim even begged him, that she was pregnant, for him not to rape her. He didn't listen.

Because he did not stop, because he was insatiable, he should not receive the benefit of concurrent sentences for any of his crimes. Show him, Judge, the same mercy he showed his victims, none.

For the crimes he committed, for the crimes which a jury has convicted him, the People ask you to sentence this defendant to the maximum sentence allowed by law, 243 years incarceration, and he should receive the maximum post-release supervision.

Thank you, Judge.

THE COURT: Mr. Lemke, is there anything you want to say?

MR. LEMKE: Yes, your Honor.

In fact, as I make a statement before this Court, there's no question that Ricardo Walters maintains his innocence, from the first time I met him until we sit here today, in spite of what a jury

may have said.

In spite of what the assistant district attorney's portrayal of Mr. Ricardo Walters is, I think the probation report, which this Court has before it, that the assistant district attorney has, as well as myself, is a much better portrayal of who Ricardo Walters is.

Mr. Walters is forty-three years of age. Mr. Ricardo Walters had graduated from John Adams High School in 1983, went on to Hunter College for liberal arts and in 1985, at the young age of twenty years of age, began his employment. He began at that time as a head teller for the Bank of America.

In 1991, he then left that position for three years to work as an employee, as a hospital police officer, at Kings County Hospital, again, to not only better himself but to give, again, a portrayal of who Mr. Ricardo Walters is and not a portrayal of a rapist who is going around feasting on immigrants as portrayed here today.

In this situation, Mr. Walters, at the age of thirty years of age, then took temporary placement, again, waiting to benefit and waiting to find something that could benefit his family, then worked for JP Morgan Chase. From 1997, at the age of

thirty-two years of age, your Honor, until his arrest in this matter, was employed as a correction officer for the City of New York's Correction Department.

He grew up in a very intact family. In fact, his family were divorced for fifty-two years -- married -- I'm sorry -- fifty-two years, your Honor.

In a situation where he has an intact family, siblings that have been supportive, friends that have been supportive as well as of Mr. Ricardo Walters, there are letters that have been provided to this Court as to who he is, the father that he is to his three children, the husband that he is to Wanda.

He has three children, your Honor, Nijah (phonetic), fourteen years of age; Elijah (phonetic) twelve years of age, and Zion (phonetic) is now nine.

The letters that I have submitted to this Court, I think, also, in part, I will read parts of because this Court now has to find a, I think, a fair sentence that needs to be imposed on a man that's maintained his innocence throughout, and clearly there will be issues for another court on appeal regarding certain issues such as whether the severance should have been granted or not, in part, I think, should be considered, whether the sentences should be concurrent as opposed to consecutive. The

People moved for consolidation and then now argue that they should be sentences imposed consecutively. I think it is insincere.

Regarding some of the letters you have seen throughout the trial in this case in support of Mr. Ricardo Walters, it didn't dwindle. In fact, it became more and more enlarged as the trial proceeded.

There's a number of letters, one from a Mr. Nigel Lewis, director of youth ministries, who states in his letter that he has known the Walters family and has been the Walters' family minister for the last four years, has the opportunity to observe the character and behavior of Ricardo Walters. We know he has never been involved in any criminal activity whatsoever. And he goes on to say that as a former church pastor as well -- that's Mr. Lewis -- that Mr. Walters is a hard worker, dutiful, caring church member whose family and lifestyle prior to incarceration was remarkable. I find the crimes of which Mr. Walters was convicted absolutely inconsistent with his character.

Again, in dealing with what Mr. Walters has done throughout his lifetime, again, inconsistent with the portrayal of the district attorney's office here, and I am mindful that a jury has convicted

Mr. Walters and it's now for you to consider the appropriate sentence. But I think all these factors need to be considered.

You have a letter from Ernest Hemans. Again, in part, he has had the privilege of knowing Mr. Walters for over twenty-five years. I have witnessed his strong character, unquestionable integrity, commitment to excellence, and last, but not least, his love of God. What stands out for me is his devotion to God and his family. I can remember Ricardo encouraging then young youths in our church to be committed, loyal and devoted to church, school, home and at work.

From his coworkers, in spite of these charges, these egregious charges, they are still here supporting Ricardo Walters knowing what type of person Ricardo Walters is, and that he's incapable of committing such heinous crimes.

From Kimara McNair, it goes on to say that she has know Ricardo for about eight years, working with him at the New York City Department of Corrections, that she, in fact, has attended, as well as others, every day of the trial, that she clearly believes the victims testifying were, indeed, violated, were, indeed, victims of a horrendous

crime, but that Ricardo Walters was not the one who committed these crimes. She has known Ricardo Walters to be a man who has volunteered in homeless shelters, that has been involved as a father, husband, provider to his family, again, something that this Court needs to consider in imposing a sentence here at this time.

You have, further, again, a number of letters. From Patricia Ann Dombrowski, who has known Ricardo, Ricky, as she refers to him, to be a good, honest, hard working, family man. He's dearly loved by his wife, Wanda, and their beautiful three children. He's a very spiritual man and has raised his children to be good, honest, well rounded children who are deeply rooted in their Christian faith. Wanda, again, the fact that she has stood beside him and supported him throughout this.

In fact -- and this is all supported in the probation report. If you read the probation report and you have to read it twice because you are figuring, wait a second, here is an individual they depict that has all these great qualities about him but, yet, you have, on the other hand, these vicious crimes that have been committed, inconsistent with the character of Mr. Walters.

You have a further letter from Miss Weir, a coworker who has been friends for the past three and a half years: I have always known him to be kind, respectful, thoughtful and a giving individual. He always has a pleasant demeanor and is always willing to help others.

You have further letters, one from Nikki Burton, who, again, has known him and worked closely with Ricardo for ten years, that he has earned the trust, the respect of his coworkers and supervisors that he was involved with. He acts in a professional and consistent manner. His dedication, love and compassion, between him, his wife and children, is what society yearns for. It is making a better world, again, from a coworker who has known Ricardo Wales.

Finally, even further, we could go on and on, from Demetria Goodwin, who has known him for approximately seven years, he got to know him, his family, the manner in which he provides for his family as a husband and as a father, that he's a family man who is described as one who puts his family first, does what's best for his family, and, certainly, wouldn't put harm in any of their way.

What you have here is everything

inconsistent with the verdict, everything inconsistent with the district attorney's description or depiction of Ricardo Walters.

So this Court now is now faced with the sentence, and I believe that the sentences that should be imposed at this point, in light of the fact that there has been a conviction, should be minimum sentences that are imposed.

And because this Court had granted the People's application to consolidate the indictments, to try them as a group, rather than as separate crimes, which I submit to this Court might not have resulted in convictions as I believe, if taken separately, it would not have survived beyond a reasonable doubt. But in granting the People's application to try them together, then he should be tried and he should then be sentenced on a concurrent basis and not on a consecutive basis, your Honor. It's those arguments that I put before the Court today.

Thank you.

THE COURT: Mr. Walters, is there anything you want to say prior to sentence being imposed?

THE DEFENDANT: Yes, your Honor.

May I stand?

THE COURT: Yes.

THE DEFENDANT: Judge James McCormack, in spite of what the devil has done by using these DAs to attempt to portray me as and by using this courtroom to wrongfully convict me, I will continue.

I am sorry to hear what these victims stated they have had to endure. But, nevertheless, these crimes are beyond the scope of my character. I stand before you an innocent man.

I have worked for the system for eleven years. I am a hard worker, God fearing, church going, family man who, in a society where many run from responsibility, I am graced by my position as a provider and protector of my family.

I have a lovely wife, Wanda, and three beautiful children that I will never ever place in harm's way. I have a sister and three brothers and a seventy-eight year old mother.

Judge McCormack, as I continue to fight for my life and reverse this injustice, I would ask that you be considerate to my wife and children.

The Bible says -- Verse 17 and 18: Our momentary struggle of achieving for us eternal glory. So I fix my eyes, not on what is seen, but on what is unseen. For what is seen is temporary, but what is

unseen is eternal.

So I say to my God, my prince of peace, my shelter in the time of storm, my bridge over troubled water, I never could have made it without you. Through heart ache and rain, I will continue to trust you.

The Bible says: All things work together for the good of them that loves the Lord and are called according to his purposes.

I continue to trust him, and so, to my family, I say, let us continue to hold back and depend on our faith. Let us continue to hold back and depend on our faith.

THE COURT: Mr. Walters, the image that you may have projected to your family, to your coworkers, to your friends, is not the same Ricardo Walters that roamed the streets of the Village of Hempstead beginning in 2005 committing what I view to be some of the most barbaric, premeditated, calculated crimes that I have ever seen in a courtroom in this County.

Let me tell you something. I am no stranger to hearing and witnessing, in the very seat that your attorney sits in right now, throughout my years, cold, hard, unbelievably depraved acts committed by people upon others.

Let me tell you, I thought I had seen it all. I thought I had witnessed it all until I sat here as a judge in your trial. There's absolutely no doubt in my mind as to the correctness of the jury's verdict. In my view, the evidence in this case was nothing short of overwhelming.

On September 7th, 2007, when you tried to run away from a brave and heroic Hempstead police officer by the name of Eugene Este, but for him, your reign of terror would have gone on and on.

Forget about the fact that you are a correction officer. I mean, in one sense, all the more reason why you shouldn't have done what you did.

And when you talk about your family and when you talk about your children -- and I did read the letters and I did look at the picture of your children. I feel sorry for them -- those were all the more reasons why you decided, when you did walk over to the dark side, that you should have come back, but you didn't.

Mr. Lemke, when he reads off your accomplishments, your work history, for the better part of your adult life, you lived a law abiding life. A typical life of most people who want to live. But somewhere, somehow, you decided to take a

walk on the dark side and you weren't coming back.

When I hear you invoke God, a higher power, I have to tell you I am disgusted to hear you use that. What higher power was Delsy Sanchez going to turn to when you had her in the back of that alley in Hempstead raping her, sodomizing her, sticking a gun to her stomach? What was she going to turn to at that time? I have to tell you, these people's lives are scarred forever.

The DNA evidence in this case clearly supported the jury's verdict in this case.

What I will remember most about the trial, Mr. Walters, is sitting here and watching as these women, one by one, got up here in this courtroom and scanned the courtroom looking, and when they locked eyes on you, you could see, from my perspective, at least, visibly, their faces begin to change because they were looking at pure evil, the same person who had committed these acts.

There's no doubt about them remembering you, and there's no doubt in my mind that when they pointed you out in this courtroom, that you were, in fact, the person who committed these acts upon them.

There's nothing left for me to do but to make sure that somebody like you does not roam in a

free society to commit the kind of incredibly barbaric acts that you committed upon these people. You prayed upon people. You chose your victims carefully. You had hope that because of their immigrant status or language barrier that they would never report this to the police. You know something, for a couple of years you were getting away with it and it was working for you until that morning on September 7th of 2007.

Believe me, Mr. Walters, I have listened to you and the only thing that is left for me to do is to make sure that you never ever are in a free society.

It is the judgment of this Court, after jury trial, for your conviction on the first count of robbery in the first degree, under Indictment 236N of '08, that you are hereby sentenced to a determinate sentence of twenty-five years with a period of five years post-release supervision.

With respect to count three, for your conviction of kidnapping in the second degree, you are hereby sentenced to a period of incarceration of a determinate sentence of twenty-five years, again with post-release supervision of five years.

With respect to your conviction under count

four of that indictment, robbery in the first degree, you are hereby sentenced to twenty-five years, also with five years post-release supervision.

With respect to count six, criminal sex act in the first degree, you are hereby sentenced to twenty-five years, again with five years post-release supervision.

With respect to count seven for your conviction of sex abuse in the first degree, you are hereby sentenced to seven years with three years post-release supervision.

Under count eight, sex abuse in the first degree, you are hereby sentenced to seven years, also with three years post-release supervision.

Under count nine, robbery in the first degree, you are hereby sentenced to twenty-five years, also five years post-release supervision.

Count ten, rape in the first degree, you are hereby sentenced to twenty-five years, also with five years post-release supervision.

Under count twelve, criminal sex act in the first degree, you are hereby sentenced to twenty-five years with five years post-release supervision.

Count thirteen, for your conviction of sex abuse in the first degree, you are hereby sentenced

to seven years with three years post-release supervision.

Under count fourteen, sex abuse in the first degree, you are hereby sentenced to seven years with three years post-release supervision.

With respect to count fifteen, robbery in the first degree, for which you stand convicted, you are hereby sentenced to twenty-five years with five years post-release supervision.

And, finally, with respect to count sixteen, attempted kidnapping in the second degree, you are hereby sentenced to fifteen years with five years post-release supervision.

Counts one, four, six, seven, eight, nine, ten, twelve, thirteen, fourteen and fifteen are to run consecutively to each other, with the exception of count three which is to run concurrent to count one, and count sixteen which is to run concurrent to count fifteen.

There will be $250 surcharge, $20 crime victim, $50 DNA database fee, $50 sex offender registration fee, and $1,000 supplemental sex offender victim fee.

You are hereby further ordered and adjudged to be committed to the New York State Department of

Correctional Services to be dealt with according to law.

MR. LEMKE: Your Honor, also for the record, there will be a notice of appeal, and I would respectfully request, because of his religious beliefs, that Mr. Walters hair not be cut and I would ask the commitment be marked accordingly.

THE COURT: Mr. Lemke, I didn't hear the last part.

MR. LEMKE: May the commitment slip be marked accordingly, for his hair?

THE COURT: Yes.

MR. LEMKE: Thank you.

THE CLERK: Mr. Walters, you have the right to appeal from this sentence and these proceedings.

If you wish to appeal, you must file your notice of appeal with the clerk of this court within thirty days.

If you cannot afford a lawyer or the minutes of these proceedings, you may make application to the Appellate Division which will, upon being satisfied that you cannot afford the same, order that an attorney be appointed and the minutes provided without any charge to you.

Your attorney is directed by the Court to

advise you in full and to take necessary steps indicated by you in this regard.

* * *

Certified to be a true and accurate transcript.

BUFF BRANSON, RPR
Senior Court Reporter